UNITED STATES of America EX
REL. Misty WALL, Relator,

v.

VISTA HOSPICE CARE d/b/a Vistacare,
et al., Defendants.

No. 3:07–c.,v–604–M

United States District Court,
N.D. Texas,
Dallas Division.

Signed March 22, 2016

tion of a draft report that was originally prepared by VistaCare's counsel or their agents/consultants and provided to Defendants' experts Dr. Janet Bull and/or Dr. Christopher Hughes and that identifies facts or data that VistaCare's attorney provided and that the experts considered in forming the expert's opinions or identifies assumptions that VistaCare's attorney provided and that the expert relied on in forming the expert's opinions. *See* Dkt. No. 212.

VistaCare has responded, *see* Dkt. No. 222 and Relator filed a reply, *see* Dkt. No. 231. United States District Judge Barbara M.G. Lynn has referred Relator's Motion to Compel to the undersigned United States magistrate judge for determination. *See* Dkt. No. 214. The Court heard oral argument on Relator's Motion to Compel on March 22, 2016. *See* Dkt. No. 255.

For the reasons and to the extent explained below, the Court GRANTS Relator's Motion to Compel Production of Documents [Dkt. No. 212].

### Background

This is a qui tam case wherein Relator alleges VistaCare, a multi-state hospice provider, violated the Federal False Claims Act by submitting claims for patients that were ineligible for the Medicare Hospice Benefit. *See* Dkt. 120. The United States of America declined to intervene in the action in September 2009. *See* Dkt. 26. Discovery began in 2012 and closed on February 15, 2016. *See* Dkt. 95; Dkt. 199. The case is currently set for trial on May 31, 2016. *See* Dkt. 199.

VistaCare listed Drs. Hughes and Bull as their experts for purposes of testifying on the following three topics at least: 1) whether 291 patients in a sample selected by VistaCare were actually eligible for the Medicare hospice benefit; 2) what the Medicare Hospice benefit regulations require, and whether VistaCare's conduct generally comported with those regulations; and 3) the reliability of the opinions expressed by Relator's expert, Karl E. Steinburg.

In December 2015, Drs. Bull and Hughes presented their opinions on these topics in one joint 587–page document signed by both of them. The first 91 pages of the report (the

Charles S. Siegel, C. Andrew Waters, Kay Reeves, Peter A. Kraus, Caitlyn E. Silhan, Loren Jacobson, Waters & Kraus LLP, Richard L. Arnold, Law Office of Richard L. Arnold, J. Scott Hogan–DOJ, US Attorney's Office, Dallas, TX, Anne N. Izzo, Waters & Kraus LLP, Baltimore, MD, James F. Barger, Jr., James Elliott Walthall, Frohsin & Barger LLC, Birmingham, AL, Michael Armitage, Waters Kraus & Paul LLP, El Segundo, CA, for Relator.

Robert M. Castle, III, William C. McMurrey, Jamie R. Welton, Lackey Hershman LLP, Dallas, TX, Penn C. Huston, King & Spalding, Houston, TX, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE

Relator Misty Wall has filed a Motion to Compel Production of Documents (the "Motion to Compel") from Defendants Vista Hospice Care, Inc. d/b/a VistaCare and VistaCare, Inc. (collectively, "Defendants" or "VistaCare"), seeking an order that VistaCare's counsel produce to Relator any por-

"Rebuttal Report") present their opinions on topics # 2 and # 3 (and is the focus of Relator's Motion to Compel), while a 380–page appendix ("Appendix C") presents their opinions on topic # 1. According to Relator, testimony at the depositions of Drs. Bull and Hughes revealed that they were not the original authors of much of the first 91 pages of their expert report, but rather that Vista-Care's lawyers were. Relator asserts that Dr. Bull's testimony indicates that there was a division of labor, with Dr. Hughes merely reviewing and commenting, Dr. Bull writing the sections of the report within her sphere of expertise, and VistaCare's lawyers writing the sections defending VistaCare's corporate conduct and attacking Dr. Steinberg.

Relator contends that, because the allegedly "ghost-written" first draft of the Rebuttal Report was considered by these experts and included in their final report, it should have been disclosed and produced under Federal Rule of Civil Procedure 26(a)(2)(B) and is discoverable under Federal Rule of Civil Procedure 26(b)(4)(C), where the authorship of the report bears directly on both the admissibility of these experts' opinions under Federal Rule of Evidence 702 and on their credibility. Relator moves to compel production of the portions of the original "ghost-written" version of the expert report that VistaCare's counsel prepared and provided to Drs. Bull and/or Hughes and that identify facts or data that VistaCare's attorney provided and that the experts considered or identify assumptions that VistaCare's attorney provided and that the expert relied on.

VistaCare contends that its experts, Drs. Bull and Hughes, spent considerable time analyzing the issues raised by Relator's voluminous expert report and the materials referenced therein, developing their rebuttal opinions and materials to support them, and conveying that information to counsel over a span of several months to reduce a draft report to writing, after which they continued to be substantially involved in its editing until finalized and where all of the facts or data considered by VistaCare's experts are specifically identified in Appendix C to their Rebuttal Report, neither expert testified to any "assumptions" provided by counsel, and

both attested the opinions in the Rebuttal Report are their own. VistaCare contends that the testimony of Drs. Bull and Hughes reveal that they expended considerable effort over several months to develop their opinions in the Rebuttal Report and, specifically, before the first draft of the Rebuttal Report (the "Draft Rebuttal Report") was generated, read and analyzed Dr. Steinberg's Report and the documents referenced in that report; identified topics and opinions they wanted their Rebuttal Report to address; reviewed additional documents produced in this action, consulted and compiled literature used to support their opinions, which were all identified in Appendix C to the Rebuttal Report; and then, through numerous communications with counsel, conveyed their analysis and opinions to counsel to reduce the Draft Rebuttal Report to writing. Relators further report that Drs. Bull and Hughes then continued to provide substantial input to further develop and revise the Rebuttal Report; in some instances, personally typed revisions to and additional inserts for certain sections of the Rebuttal Report and provided those to counsel to incorporate into the Rebuttal Report; and, on December 7, 2015, having spent several months preparing and revising it, issued the Rebuttal Report.

According to VistaCare, at Dr. Bull's and Dr. Hughes's depositions, Relator's counsel did not elicit testimony about the basis for the experts' opinions in the Rebuttal Report, or whether drafts of those sections identified any "facts or data" provided by counsel, or "assumptions" provided by counsel that are not contained in the materials listed on Appendix C of the Rebuttal Report. Instead, VistaCare contends, Relator's Motion to Compel merely cites testimony stating that someone other than the experts physically typed the Rebuttal Report and disregards testimony stating that the experts reviewed the Steinberg Report, and other documents containing the facts and data they considered in developing their opinions (all identified on Appendix C to the Rebuttal Report), and that they conveyed to counsel their opinions to reduce the Draft Rebuttal Report to writing. VistaCare asserts that Relator ignores this testimony and merely speculates that a "first draft" typed by attorneys may have

identified facts, data, or assumptions separate and apart from the facts and data the experts identified on Appendix C to the Rebuttal Report.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to make a disclosure required by Federal Rule of Civil Procedure 26(a) or to produce documents requested under Federal Rule of Civil Procedure 34. *See* FED.R.CIV.P. 37(a)(3)(A), (B)(iv).

Under Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Under Federal Rule of Civil Procedure 26(a)(2)(B), "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." FED.R.CIV.P. 26(a)(2)(B).

■ The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." The burden is on the party who seeks work product protection to show that the materials

at issue were prepared by its representative in anticipation of litigation or for trial. *See Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir.1985). "If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady,* 238 F.R.D. 429, 443 (N.D.Tex.2006).

Rule 26(b)(3)(B) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). Under Federal Rule of Civil Procedure 26(b)(3)(A), a party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the materials are otherwise discoverable under Federal Rule of Civil Procedure 26(b)(1) and that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See* FED. R. CIV. P. 26(b)(3)(A).

■ And the work-product rule accords "special protection to work-product revealing the attorney's mental processes." *Upjohn Co. v. United States,* 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). As such, "if the materials sought are opinion work-product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information." *Brady,* 238 F.R.D. at 443; *accord S.E.C. v. Cuban,* No. 3:08-cv-2050-D, 2012 WL 456532, at *2 & n.3 (N.D.Tex. Feb. 10, 2012).

■ And, "[u]nlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." *Brady,* 238 F.R.D. at 444.

Federal Rule of Civil Procedure 26(b)(4)(B) extends work-production protection to drafts of expert reports, providing that "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." FED. R. CIV. P.

26(b)(4)(B). And Federal Rule of Civil Procedure 26(b)(4)(C) provides that "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED.R.CIV.P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)–(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED.R.CIV.P. 37(a)(5)(B)–(C).

## Analysis

### The Parties' Positions

Relator asserts that VistaCare's lawyers wrote significant portions of the Draft Rebuttal Report, which conduct is neither permitted nor protected by Rule 26, and that, because a report that is originally authored by a lawyer and then provided to the expert contains facts, data, and assumptions, it constitutes a lawyer-expert communication that must be disclosed under Rule 26(a)(2)(B) and is discoverable under Rule 26(b)(4)(C)(ii) and (iii). According to Relator, these provisions strike the balance between a party's need to communicate freely with a retained expert and the opposing party's right to know whether the work is the expert's own, which bears on both admissibility and credibility.

Relator argues that VistaCare's counsel's authorship of significant portions of the Draft Rebuttal Report violates both the letter and the spirit of Rules 26(a)(2)(B) and 26(b)(4)(C) and that the Court should therefore order VistaCare to produce the original Draft Rebuttal Report that it provided to Drs. Bull and Hughes.

VistaCare responds that the Draft Rebuttal Report is protected from disclosure as work product under Rule 26(b)(4)(B), which, unlike Rule 26(b)(4)(C), expressly applies to draft expert reports and protects them from discovery and does not contain and is not subject to the exceptions found in Federal Rule of Civil Procedure 26(b)(4)(C)(i)-(iii). And VistaCare argues that, where the Draft Rebuttal Report is protected work product under Federal Rule of Civil Procedure 26(b)(3), Relator has not made the required showing of substantial need under Rule 26(b)(3)(A)(ii). VistaCare argues that Relator only seeks discovery of the Draft Rebuttal Report to attack the credibility of the experts for not typing the first draft of the Rebuttal Report, which VistaCare contends is testimony that Relator already has from the depositions of Drs. Bull and Hughes.

VistaCare contends that attorneys can permissibly assist experts with drafting a report and even reduce an expert's oral opinion to

writing so long as the report reflects the expert's actual views. According to VistaCare, courts consider a report to have been impermissibly "ghost-written" if it is drafted entirely by counsel without prior substantive input from an expert, and there is no "ghost-writing" if the expert has freely authorized and adopted the report as his own and not merely for appeasement or because of intimidation or some undue influence by the party or counsel who has retained him.

VistaCare asserts that the Rebuttal Report was not "ghost-written" by attorneys, where Drs. Bull and Hughes provided substantial input before the Draft Rebuttal Report was generated and during its revision and considered all of the opinions in the Rebuttal Report their own. VistaCare contends that its attorneys' physically typing portions of the Rebuttal Report does not change that conclusion and that Relator's arguments that rely on alleged "ghost-writing" as grounds for an order compelling the production of the Draft Rebuttal Report under Rule 26(b)(4)(C)(ii)-(iii) should be rejected.

Finally, VistaCare argues that Relator's assertion that the Draft Rebuttal Report may have identified facts, data, or assumptions for the first time is based on pure speculation, even though Relator had the opportunity at the depositions of Drs. Hughes and Bull to inquire about what—if any—facts, data, and assumptions were identified for the experts by attorney-expert communications as opposed to the facts and data identified on Appendix C of the Rebuttal Report. According to VistaCare, the testimony in the record is that all facts and data considered by Drs. Bull and Hughes are identified in Appendix C to the Rebuttal Report and that these—and not a first draft of the Rebuttal Report—were the basis of their opinions.

For the first time in reply, Relator argues that VistaCare waived any work-production protection that it might have because it allowed Dr. Bull to answer question after question about the author of the original version of the Rebuttal Report over 12 pages of transcript before interposing a single privilege/work product objection.

Relator also asserts that VistaCare misrepresents the record when arguing that its lawyers were mere "typists" of the Draft Rebuttal Report. Rather, Relator contends, the record reflects that, at her deposition, Dr. Bull clearly explained (until she was instructed by VistaCare's counsel to stop) which sections she wrote and which the VistaCare lawyers wrote.

Relator also asserts that the Draft Rebuttal Report's having been ghost-written is buttressed by Dr. Bull's almost complete inability to articulate the methodology that she used to arrive at the opinions contained in the Rebuttal Report. Relator replies that the sections of the Draft Rebuttal Report that were ghost-written were those interpreting VistaCare corporate documents and evaluating the appropriateness of its conduct—which are sections containing facts and data not available to outside experts—and that, while it is conceivable that an expert could have obtained the relevant documents, studied them, and formulated opinions that he or she then conveyed to counsel, the record here does not support that view. Instead, according to Relator, when asked, Dr. Bull was unable to recall which VistaCare corporate documents she had read or what her approach had been to summarizing and using those documents. Relator asserts that nothing about that testimony suggests that she was in any position to have formed her own opinions about VistaCare's conduct based on its documents and conveyed those thoughts to VistaCare's counsel, who (according to VistaCare's response) simply reduced them to writing.

Relator contends that VistaCare intends to parade Dr. Hughes and Dr. Bull in front of the jury in this case so they can serve as VistaCare's "avatar," reciting VistaCare's version of the facts, as presented by their lawyers, with the jury none the wiser. According to Relator, without the "ghost-written" Draft Rebuttal Report provided by VistaCare's lawyers to Drs. Bull and Hughes, Relator will be constrained in her ability to fully cross-examine those experts about the source of their "knowledge" about VistaCare's conduct.

Relator also argues that VistaCare incorrectly asserts that Rule 26(b)(4)(B)'s protection of draft reports is absolute and would protect even facts, data, assumptions, and compensation-related information from disclosure, no matter what Rule 26(a)(2)(B) requires and no matter what the exceptions presented in Rule 26(b)(4)(C) provide. According to Relator's reading of Rule 26, draft reports may be protected but not when the communication from the attorney to the expert labeled a "draft report" includes the provision of facts, data, and assumptions. Relator contends that, when that is the case, and where Rules 26(b)(4)(B) and 26(b)(4)(C) emphasize the discoverability of facts, data, and assumptions provided to the expert "regardless of the form," Rule 26(a)(2)(B) and Rule 26(b)(4)(C)(ii)-(iii) mandate disclosure of the communication, even when it comes in the form of a "draft report." And Relator asserts that Rule 26(b)(4)(B) still provides real protection where, although communications transmitting any such facts, data, and assumptions are discoverable under Rules 26(a)(2)(B) and 26(b)(4)(C)(ii)-(iii), communications discussing strategy, plans, the emphasis to take in an expert report, suggestions for additional work, or deletions are all protected.

In contrast, according to Relator, VistaCare's interpretation—in which the protection afforded "draft reports" is absolute—would read both Rule 26(a)(2)(B) and the Rule 26(b)(4)(C)(i)-(iii) exceptions out of Rule 26 and render them a nullity. Relators asserts that, under VistaCare's reading, the "form" of attorney-expert communications would control over the substance and that, for example, had defense counsel drafted a memorandum to their experts identifying facts, data, or assumptions but titled it a "draft report," the memorandum would be shielded from discovery under Rule 26(b)(4)(B), notwithstanding Rule 26(b)(4)(C)(ii)-(iii), merely because it was titled "draft report" and not a "memorandum."

## Interpretation of Rule 26(b)(4)

■ Resolving Relator's Motion to Compel requires the Court to interpret when and how a draft expert report can be ordered disclosed to an opposing party under Federal Rule of Civil Procedure 26. When interpreting the Federal Rules of Civil Procedure, the Court is to give the rules their plain meaning, and, as with a statute, the inquiry is complete if the Court finds find the text of the rules to be clear and unambiguous. *See Yesh Music v. Lakewood Church,* 727 F.3d 356, 359 (5th Cir.2013). The Court may also give weight to, and consider as persuasive authority, the construction of a rule offered by the Advisory Committee in its notes. *See, e.g., Schiavone v. Fortune,* 477 U.S. 21, 31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

Rule 26(a)(2)'s expert witness disclosure requirements mandate that a party "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," which "disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," which report must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." FED.R.CIV.P. 26(a)(2)(A)–(B).

As amended in 2010, Rule 26(b)(4)(B) extends Rule 26(b)(3)'s work-product protection to "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." FED. R. CIV. P. 26(b)(4)(B). Also as amended in 2010, Rule 26(b)(4)(C) extends Rule 26(b)(3)'s work-product protection to "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C).

Rule 26(a)(2)(B) requires that, for a retained, testifying expert witness, a party disclose "a written report—prepared and signed by the witness." FED.R.CIV.P. 26(a)(2)(B). VistaCare contends that a draft of such a report typed up by an attorney is protected as work product under Rule 26(b)(4)(B) as a "draft[ ] of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." VistaCare contends that the exceptions to work-product protection in Rule 26(b)(4)(C)(ii)-(iii) do not apply to drafts of Rule 26(a)(2)(B) expert reports.

Relator, in turn, notes that Rule 26(a)(2)(C) more broadly addresses work-product protection for "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications," and governs discoverability of any such communications when they are in the form of a draft expert report. Relator contends that a draft prepared entirely by an attorney is subject to Rule 26(b)(2)(C) as a communication from an attorney to the expert witness and subject to disclosure under the Rule 26(b)(2)(C)(ii)-(iii) exceptions to work-product protection insofar as the draft identifies facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed or identifies assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

The Court has located only very limited case law or commentary interpreting Rule 26(b)(4), as amended in 2010, and the interplay between Rules 26(b)(4)(B) and 26(b)(4)(C). But what little there is appears to generally support Relator's view.

One court recently noted the observations from the decision in *United States Commodity Futures Trading Commission v. Newell*, 301 F.R.D. 348 (N.D.Ill.2014)—a decision on which Vista–Care itself relies—that " '[w]ork-product protection does not apply to communications that identify facts or data the attorney provided and the expert considered, or assumptions the attorney provided and the expert relied on' " and that, "[t]hus, '[a]rguably, facts, data or assumptions provided by

an attorney to the expert should not be insulated from production simply because the vehicle of communication was a draft of the report or an attorney's revision to the expert's draft.' " *Dyson, Inc. v. Euro–Pro Operating LLC*, No. 14 C 9442, 2015 WL 1120006, at \*18 (N.D.Ill. Mar. 10, 2015) (quoting *Newell*, 301 F.R.D. at 353).

The court in *Newell* more fully discussed the issue now facing this Court as follows:

The CFTC alternatively argues that the drafts and communications at issue here fall under the exceptions in Rule 26(b)(4)(C). (Pl.'s Mem. at 1.) Work-product protection does not apply to communications that identify facts or data the attorney provided and the expert considered, or assumptions the attorney provided and the expert relied on. Fed.R.Civ.P. 26(b)(4)(C)(ii) and (iii). Pursuant to those exceptions, defendants must disclose communications from Mr. Iavarone that reveal facts or data defendants' experts considered or assumptions their experts relied on. (Pl.'s Mem. at 12.) As the Advisory Committee cautions, however, Rule 26(b)(4)(C) only requires disclosure of those parts of lawyer-expert communications that fall under the listed exceptions.

[T]he discovery authorized by the exceptions does not extend beyond those specific topics. Lawyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics.

Fed.R.Civ.P. 26 advisory comm. n. (2010).
. . . .

The exceptions in Rule 26(b)(4)(C) apply explicitly only to communications between experts and lawyers, not to draft reports, which Rule 26(b)(4)(B) protects from production. Arguably, facts, data or assumptions provided by an attorney to the expert should not be insulated from production simply because the vehicle of communication was a draft of the report or an attorney's revision to the expert's draft. Here, however, there is no need to resolve the question of whether the exceptions in Rule

26(b)(4)(C) apply to draft reports because there do not appear to be any additional drafts to be produced.

301 F.R.D. at 353.

The Advisory Committee notes to the 2010 amendments to Rule 26 explain that "[t]he amendments to Rule 26(a)(2) require disclosure regarding expected expert testimony of those expert witnesses not required to provide expert reports and limit the expert report to facts or data (rather than 'data or other information,' as in the current rule) considered by the witness" and that "Rule 26(b)(4) is amended to provide work-product protection against discovery regarding draft expert disclosures or reports and—with three specific exceptions—communications between expert witnesses and counsel." Fed. R.Civ.P. 26 advisory comm. n. (2010).

The Advisory Committee explained that, "[i]n 1993, Rule 26(b)(4)(A) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including—for many experts—an extensive report" and that "[m]any courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports." *Id.* The committee reported that it "has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects," where "[c]osts have risen"; where "[a]ttorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial—because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses"; and where, "[a]t the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work." *Id.*

According to the committee, "Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all 'facts or data considered by the witness in forming' the opinions to be offered, rather than the 'data or other information' disclosure prescribed in 1993"; that "[t]his amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports"; and that "[t]he amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications." *Id.* The Advisory Committee further explained its intention as to the scope and effect of amending Rule 26(a)(2)(B)(ii) to require disclosure of "facts or data":

> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

*Id.*

With regard to drafts of expert reports, the Advisory Committee explained that "Rule 26(b)(4)(B) is added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures" and that this protection "applies regardless of the form in which the draft is recorded, whether written, electronic, or otherwise." *Id.*

The Advisory Committee further explained that "Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise" and that "[t]he addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." *Id.*

According to the Advisory Committee, "Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." *Id.*

"Although attorney-expert communications are generally protected by Rule 26(b)(4)(C), the protection does not apply to the extent the lawyer and the expert communicate about matters that fall within three exceptions." *Id.* But, as the court in *Newell* noted, the Advisory Committee explained that "the discovery authorized by the exceptions does not extend beyond those specific topics. Lawyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics." *Id.* According to the Advisory Committee,

> [u]nder the amended rule, discovery regarding attorney-expert communications on subjects outside the three exceptions in Rule 26(b)(4)(C), or regarding draft expert reports or disclosures, is permitted only in limited circumstances and by court order. A party seeking such discovery must make the showing specified in Rule 26(b)(3)(A)(ii)—that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship. It will be rare for a party to be able to make such a showing given the broad disclosure and discovery otherwise allowed regarding the expert's testimony. A party's failure to provide required disclosure or discovery does not show the need and hardship required by Rule 26(b)(3)(A); remedies are provided by Rule 37.
>
> In the rare case in which a party does make this showing, the court must protect against disclosure of the attorney's mental impressions, conclusions, opinions, or legal theories under Rule 26(b)(3)(B). But this protection does not extend to the expert's own development of the opinions to be presented; those are subject to probing in deposition or at trial.

*Id.*

Thus, "under Rule 26(b)(4)(C)(ii) discovery is permitted to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed," but "[t]he exception applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." *Id.* And, "under Rule 26(b)(4)(C)(iii) discovery regarding attorney-expert communications is permitted to identify any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed." *Id.* "For example, the party's attorney may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions." *Id.* But, the Advisory Committee explained, "[t]his exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed. More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception." *Id.*

The Advisory Committee's notes, accordingly, do not clearly explain whether Rule 26(b)(4)(B) precludes the application of Rule 26(b)(4)(C) and its exceptions to any communications between the party's attorney and the expert witness in the form of a draft expert report. But, shortly after the 2010 amendments took effect, another court quoted—and endorsed—commentary on this question:

> As the Amendment has been recently codified, it remains to be determined how courts will interpret its provisions. As one commentator notes, an "unanswered question is whether counsel will be able to use Rule 26(b)(4)(B) to trump Rule 26(b)(4)(C)(ii-iii)—can counsel protect from discovery facts or data considered by or assumptions relied upon by a retained expert by providing some in a draft report." *See* George Lieberman, "Experts and the Discovery/ Disclosure of Protected Communication," 78 Defense Counsel Journal 220, 227 (Apr.2011). As this defense counsel commentator surmises, "[c]ourts would not seem to be receptive to such an obvious loophole, and caution dictates against embarking upon such a course without the support of new case law in support of such a practice." *Id.* We endorse this view.

*In re Asbestos Products Liab. Litig. (No. VI)*, No. MDL 875, 2011 WL 6181334, at *7 n.10 (E.D.Pa. Dec. 13, 2011).

■ Based on the text of Rule 26(b)(4) as well as its structure and context, and looking to the Advisory Committee's notes for guidance and support, the Court concludes that, notwithstanding Rule 26(b)(4)(B), Rule 26(b)(4)(C) and its exceptions apply to any communications between the party's attorney and the expert witness in the form of a draft expert report to the extent that portions of the draft transmitted between the attorney and the expert either identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed or identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. If other portions of a draft report (as transmitted between the attorney and the expert) do not identify any such facts or data or assumptions, both Rules 26(b)(4)(B) and 26(b)(4)(C) would collectively protect those portions of the draft report as work product under Rule 26(b)(3).

The text, structure, and context of Rule 26(b)(4) support this conclusion. *See generally Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (interpreting the specific text of Federal Rule of Civil Procedure 11 at issue here in the total context of all the provisions of Rule 11 dealing with the signing of filings); *Hodge v. Harris Cty. Hosp. Dist.*, 66 Fed. Appx. 526 (5th Cir.2003) (looking to "the structure of the federal rules, and our interpretation of them," to support a rule's construction). Rule 26(b)(4)(C)'s inclusion of the phrase "regardless of the form of the communications," by its terms, encompasses communications in the form of a draft expert report. Although Rule 26(b)(4)(B) does not contain Rule 26(b)(4)(C)(i)-(iii)'s enumerated exceptions, neither does it contain express language to the effect that the work-product protection of draft reports is governed exclusively by Rule 26(b)(4)(B). Likewise, Rule 26(b)(4)(C) does not include language making its provision of work-product protection and corresponding express exceptions "subject to" Rule 26(b)(4)(B) or to carve out the shar-

ing of drafts of Rule 26(a)(2) expert reports or disclosures from the attorney-expert communications that it covers. And, where Rule 26(b)(4)(C) more broadly governs the work-product protection of attorney-expert communications regardless of the form of the communications, there is no need for Rule 26(b)(4)(B) to explicitly incorporate or include the Rule 26(b)(4)(C)(I)-(iii) exceptions.

But reading Rule 26(b)(4)(C) and its exceptions to apply to any communications between the party's attorney and the expert witness of facts or data that the attorney provided and the expert considered or of assumptions that the attorney provided and the expert relied on—including in the form of a draft expert report transmitted between an attorney and an expert—is consistent with the structure and purpose of Rules 26(a)(2)(B) and 26(b)(4). As explained by the Advisory Committee, these rules limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel but broadly require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The United States Court of Appeals for the Ninth Circuit has observed that

> [t]he historical evolution of the rule, its current structure, and the Committee's explanatory notes make clear that the driving purpose of the 2010 amendments was to protect opinion work product—i.e., attorney mental impressions, conclusions, opinions, or legal theories—from discovery. *See* 1 Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* Rule 26 cmt. & n.82 (2013) (indicating that the Committee was attempting to "alter the outcome reached in" cases such as *Regional Airport Authority [of Louisville v. LFG, LLC*, 460 F.3d 697, 714 (6th Cir.2006) ] ). The protections for draft reports and attorney-expert communications were targeted at the areas most vulnerable to the disclosure of opinion work product. The Committee thus sought to acknowledge the reality that attorneys often feel that it is extremely useful—if not necessary—to confer and strategize with their experts. But there is no indication that the Committee was attempting to do so at the expense of an adversary's ability

to understand and respond to a testifying expert's analysis.

*Republic of Ecuador v. Mackay,* 742 F.3d 860, 870 (9th Cir.2014) (footnote omitted). Rules 26(b)(4)(B) and 26(b)(4)(C), by their terms and effect, do not impede discovery about the development, foundation, or basis of opinions to be offered by the expert.

Accordingly, reading Rule 26(b)(4) to require disclosure of those portions of a draft expert report transmitted between an attorney and an expert that identify facts, data, or assumptions provided by an attorney—even though the vehicle of communication between the attorney and the expert was a draft of a report or an attorney's revision to the expert's draft—does not undermine the purpose behind providing work-production protection to draft reports or render Rule 26(b)(4)(B)'s extension of work-product protection to drafts a nullity. The discovery authorized by the Rule 26(b)(4)(C)(ii)-(iii) exceptions does not extend beyond the specific topics listed in the exceptions. The remainder of any draft report would be covered as work product under Rule 26(b)(4)(B) and, for that matter, insofar as it is transmitted between the attorney and the expert, Rule 26(b)(4)(C).

Thus, to conclude that Rule 26(b)(4)(B) precludes the application of Rule 26(b)(4)(C) and its exceptions to any communications between the party's attorney and the expert witness in the form of a draft expert report and permits attorneys to protect from discovery facts or data considered by or assumptions relied upon by a retained expert by providing some in a draft report would be inconsistent with Rule 26(b)(4)(C)(ii)-(iii)'s exceptions to an otherwise broad application of work-product protection and the structure and purpose of Rules 26(a)(2)(B) and 26(b)(4) described above.

Further, adopting VistaCare's construction of Rule 26(b)(4) would also be an odd result where attorneys' "ghost-writing" an expert's report is generally prohibited.

As explained above, Rule 26(a)(2)(B) requires that a party disclose to the other parties "a written report" "prepared and signed by the" testifying expert witness. FED. R.CIV.P. 26(a)(2)(B). The Advisory Committee explained, in connection with the 1993 amendments to Rule 26 to mandate reports, that "Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." Fed.R.Civ.P. 26 advisory comm. n. (1993).

As one commentator has observed, "[c]ourts interpret the requirement that the report be 'prepared' by the expert as mandating that it be drafted by the expert him-or herself, not the attorney who retained the expert. Since the 1993 amending, numerous courts have admonished attorneys for ghost-writing their experts' reports, going as far as to preclude experts from testifying." William R. Stuart III, "Recording a Tense Coexistence: Can Federal Rule 26 Both Prohibit Ghost-Writing and Protect Expert-Related Work Product?" 57 No. 9 DRI For Def. 20 (2015) (collecting cases).

"In completing the written report, Rule 26(a)(2) contemplates that counsel may/will provide the expert with some assistance." *Estate of LaFarge ex rel. Blizzard v. Kyker,* No. 1:08CV185, 2011 WL 6151595, at *6 (N.D.Miss. Dec. 12, 2011). But " '[s]everal courts have addressed the permissible amount of attorney involvement in drafting an expert report' " and " 'conclude that as long as the substance of the opinions is from the expert, the attorney's involvement in the written expression of those opinions does not make them inadmissible." ' *Id.* (quoting *Seitz v. Envirotech Sys. Worldwide Inc.,* No. Civ. A. H-02-4782, 2008 WL 656513, at *2 (S.D.Tex. Mar. 6, 2008)). As one court recognized, " 'some attorney involvement in the preparation of an expert report is permissible' as long as the expert 'substantially participate[s] in the preparation of his report.' " *Seitz,* 2008 WL 656513, at *2 (quoting *Manning v. Crockett,* No. 95 C 3117, 1999 WL 342715, at *3 (N.D.Ill. May 18, 1999)). The United States Court of Appeals for the Sixth Circuit has held that "[a] party's attorney can reduce an expert's oral opinion to writing

so long as the report reflects the actual views of the expert." *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir.2008).

At the same time, " '[a]llowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word 'prepared' completely out of the rule.' " *Seitz*, 2008 WL 656513, at *2 (quoting *Manning*, 1999 WL 342715, at *3). As one court has explained, "[p]reparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement. Therefore, an attorney—or [ ] a party—is not permitted to 'ghost-write' an expert's report." *O'Hara v. Travelers*, No. 2:11-CV-208-KS-MTP, 2012 WL 3062300, at *9 (S.D.Miss. July 26, 2012) (citations and internal quotation marks omitted). Although the United States Court of Appeals for the Fifth Circuit apparently has not yet addressed the issue of "ghost-writing" and the permissible amount of attorney involvement in drafting an expert report, courts in the Fifth Circuit have explained that "[g]host writing a testifying expert's report is the preparation of the substance writing of the report by someone other than the expert purporting to have written it" and that, "[t]o prove ghost writing, [a party] must use the available documents to show that [someone else] provided the substance of the opinions of the testifying expert [ ], not just editorial assistance." *Seahorn Invs., LLC v. Fed. Ins. Co.*, No. 1:13CV320-HSO-RHW, 2015 WL 5297264, at *8 (S.D.Miss. Sept. 10, 2015) (citations and internal quotation marks omitted).

#### Application of Rule 26(b)(4)(B)

Relator asserts, in the first instance, that a draft prepared entirely by an attorney is not even a draft of a written report "prepared and signed by the witness" as required by Rule 26(a)(2)(B) and so not subject to Rule 26(b)(4)(B)'s extension of work-production protection. The Court disagrees with this reading of Rule 26(b)(4)(B).

As noted above, compliance with Rule 26(a)(2)(B) requires disclosing to the other parties to a case a written report prepared and signed by the testifying expert witness. Rule 26(b)(4)(B) extends work-product protection to any draft of such a report, regardless of the form in which the draft is recorded. By its terms, Rule 26(b)(4)(B) is not limited to drafts prepared by the expert. Whatever the other implications may or may not be of any evidence that an attorney and not an expert prepared a first draft of a report, the Court concludes that such a report is still covered by Rule 26(b)(4)(B).

This conclusion is further supported by the practical observation that, were it otherwise, the determination of whether Rule 26(b)(4)(B) applies would "require production of all of the drafts of the report for comparison, as well as production of all, or virtually all, communications between expert and counsel," despite Rule 26(b)(4)'s generally precluding that discovery. *Newell*, 301 F.R.D. at 352.

#### Application of Rule 26(b)(4)(C)

The Court likewise concludes that, based on the Court's interpretation of Rules 26(b)(4)(B) and 26(b)(4)(C) above, further analysis of whether the Draft Rebuttal Report was "ghost-written" by VistaCare's counsel is unnecessary to resolve the limited request that Relator makes in her Motion to Compel. As clarified at oral argument, Relator seeks through her Motion to Compel only disclosure of the portions of the Draft Rebuttal Report that VistaCare's counsel wrote or prepared in the first instance and that identify facts or data that VistaCare's attorney provided and that the experts considered or identify assumptions that VistaCare's attorney provided and that the expert relied on.

VistaCare admits that its counsel, at the least, reduced the Draft Rebuttal Report to writing, and Drs. Bull and Hughes both testified that counsel sent them the first draft electronically. That constitutes a communication between VistaCare's counsel and these experts in the form of a transmitted draft report, and, under Rule 26(b)(4)(C)(ii)-(iii), regardless of whether the Draft Rebuttal Report was "ghost-written" or not, Relator is entitled to disclosure of all portions, if any, of

**511**

the draft report that either identify facts or data that VistaCare's attorney provided to Drs. Bull and/or Hughes and that the expert considered in forming the opinions to be expressed or identify assumptions that VistaCare's attorney provided to Drs. Bull and/or Hughes and that the expert relied on in forming the opinions to be expressed.

Notwithstanding VistaCare's assertion that Relator failed her evidentiary burden, the Court concludes that Relator was not required to provide evidence that any portions of the Draft Rebuttal Report actually identifies otherwise-undisclosed facts that VistaCare's attorney provided and the experts considered or identifies any assumptions that VistaCare's attorney provided and the experts relied on. If portions of the Draft Rebuttal Report do, those portions are discoverable under Rule 26(b)(4), and Relator can obtain that discovery on this Motion to Compel regardless of what she did or did not ask Drs. Bull and Hughes at their depositions.

Waiver

At oral argument, Relator's counsel clarified that the waiver argument in her reply was properly directed to further deposition questioning of Dr. Bull, which is not at issue on the Motion to Compel.

**Conclusion**

Accordingly, the Court GRANTS Relator's Motion to Compel Production of Documents [Dkt. No. 212]. The Court ORDERS that VistaCare must produce to Relator's counsel, by **April 1, 2016**, any portions of the Draft Rebuttal Report that VistaCare's counsel wrote or prepared in the first instance and that identify facts or data that VistaCare's attorney provided and that the experts considered or identify assumptions that VistaCare's attorney provided and that the expert relied on.

Under Federal Rule of Civil Procedure 37(a)(5), the Court determines that, under all of the circumstances presented here, Relator and VistaCare should bear their own expenses, including attorneys' fees, in connection with Relator's Motion to Compel Production of Documents [Dkt. No. 212].

Out of an abundance of caution, the Court will enter this Memorandum Opinion and

Order under seal because the underlying motion papers were filed under seal pursuant to the Protective Order [Dkt. No. 101]. The parties are further ORDERED to file a joint status report by **April 1, 2016** setting forth their views on whether this Memorandum Opinion and Order contains any confidential information subject to the Protective Order [Dkt. No. 101] and should therefore remain sealed.

SO ORDERED.